1

2

3

4

5        UNITED STATES DISTRICT COURT

6        EASTERN DISTRICT OF WASHINGTON

7   RONALD WILLIAM SKAGGS, JR.,

8                 Plaintiff,                    NO: 2:13-CV-0322-TOR

9        v.                                     ORDER GRANTING DEFENDANT'S
                                                MOTION FOR SUMMARY
10  CAROLYN W. COLVIN, Acting                   JUDGMENT
    Commissioner of Social Security
11  Administration,

12                Defendant.

13

14       BEFORE THE COURT are the parties' cross-motions for summary

15  judgment (ECF Nos. 14 and 18).  Plaintiff is represented by Donald C. Bell.

16  Defendant is represented by Erin F. Highland.  This matter was submitted for

17  consideration without oral argument.  The Court has reviewed the administrative

18  record and the parties' completed briefing and is fully informed.  For the reasons

19  discussed below, the Court grants Defendant's motion and denies Plaintiff's

20  motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§  423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

1   416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

2   Commissioner must find that the claimant is not disabled.  20 C.F.R.

3   §§ 404.1520(b); 416.920(b).

4       If the claimant is not engaged in substantial gainful activities, the analysis

5   proceeds to step two.  At this step, the Commissioner considers the severity of the

6   claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

7   claimant suffers from "any impairment or combination of impairments which

8   significantly limits [his or her] physical or mental ability to do basic work

9   activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

10  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

11  however, the Commissioner must find that the claimant is not disabled.  *Id.*

12      At step three, the Commissioner compares the claimant's impairment to

13  several impairments recognized by the Commissioner to be so severe as to

14  preclude a person from engaging in substantial gainful activity.  20 C.F.R.

15  §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

16  severe than one of the enumerated impairments, the Commissioner must find the

17  claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

18      If the severity of the claimant's impairment does meet or exceed the severity

19  of the enumerated impairments, the Commissioner must pause to assess the

20  claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

1  defined generally as the claimant's ability to perform physical and mental work

2  activities on a sustained basis despite his or her limitations (20 C.F.R.

3  §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of

4  the analysis.

5      At step four, the Commissioner considers whether, in view of the claimant's

6  RFC, the claimant is capable of performing work that he or she has performed in

7  the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv);

8  416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the

9  Commissioner must find that the claimant is not disabled.  20 C.F.R.

10 §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work,

11 the analysis proceeds to step five.

12     At step five, the Commissioner considers whether, in view of the claimant's

13 RFC, the claimant is capable of performing other work in the national economy.

14 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

15 the Commissioner must also consider vocational factors such as the claimant's age,

16 education and work experience.  *Id.*  If the claimant is capable of adjusting to other

17 work, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

18 §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to

19 other work, the analysis concludes with a finding that the claimant is disabled and

20 is therefore entitled to benefits.  *Id.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

1    The claimant bears the burden of proof at steps one through four above.

2    *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

3    the analysis proceeds to step five, the burden shifts to the Commissioner to

4    establish that (1) the claimant is capable of performing other work; and (2) such

5    work "exists in significant numbers in the national economy."  20 C.F.R.

6    §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir.

7    2012).

8                                    **ALJ'S FINDINGS**

9         Plaintiff filed applications for disability insurance benefits and supplemental

10   security income disability benefits on December 13, 2007, alleging a disability

11   onset date of September 15, 2005.  Tr. 149-151, 152-154.  These applications were

12   denied initially and upon reconsideration, and Plaintiff requested a hearing.  Tr. 93-

13   96, 97-98, 99-100, 101-02.  A hearing was held before an Administrative Law

14   Judge on November 2, 2009.  Tr. 48-88.  At the hearing, Plaintiff amended his

15   alleged onset date to May 1, 2006. Tr. 57-58.  The ALJ rendered a decision

16   denying Plaintiff benefits on February 23, 2010.  Tr. 27-42.  The Appeals Council

17   denied Plaintiff's request for review, Tr. 1–7, and after the Plaintiff filed an action

18   in this Court, the parties stipulated to a remand of the matter for further

19   administrative proceedings.  Tr. 849-851.  The Appeals Council remanded the

20   matter to an ALJ to complete the administrative record and combine a subsequent

1  claim filed in August 2011, for concurrent benefits. Tr. 836-838. After a

2  supplemental hearing, Tr. 785-833, the ALJ issued an unfavorable decision finding

3  Plaintiff not disabled. Tr. 747-769.

4      The ALJ found that Plaintiff met the insured status requirements of Title II

5  of the Social Security Act through March 31, 2008. Tr. 750. At step one, the ALJ

6  found that Plaintiff had not engaged in substantial gainful activity since May 1,

7  2006, the amended alleged onset date. *Id.* At step two, the ALJ found that

8  Plaintiff had severe impairments consisting of status post left knee arthroscopic

9  partial medial meniscectomy and anterior cruciate ligament reconstruction; carpal

10  tunnel syndrome status post bilateral release surgeries; cervical degenerative disc

11  disease and degenerative joint disease with C4-5 and C5-6 foraminal narrowing;

12  thoracic and lumbar degenerative disc disease and degenerative joint disease

13  without stenosis or foraminal narrowing; bipolar disorder; pain disorder; antisocial

14  personality disorder; and polysubstance abuse history with ongoing alcohol and

15  marijuana dependence. Tr. 750-51.

16      At step three, the ALJ found that Plaintiff's severe impairments did not meet

17  or medically equal a listed impairment. Tr. 751-52. The ALJ then determined that

18  Plaintiff had the residual functional capacity to:

19      [P]erform light work as defined in 20 CFR 404.1567(b) and
     416.967(b). The claimant is able to occasionally climb ramps and
20      stairs, balance, crouch, crawl, stoop, and kneel. The claimant is not
     able to climb ladders, ropes, and scaffolds. The [claimant] should

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

avoid even moderate exposure to vibrations or hazards such has unprotected heights and moving machinery. The claimant is capable of no more than SVP 3 level tasks (the low end of semi-skilled). The claimant is capable of superficial contact with the general [public] and no cooperative teamwork with coworkers.

Tr. 752-53 (bracketed words inserted).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 767.  At step five, after considering the Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as mail clerk, laundry sorter, and bottling line attendant. Tr. 767-68.  In light of the step five findings, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied his claims on that basis.  Tr. 768-69.

Plaintiff filed exceptions with the Appeals Council, Tr. 739-43, but the Appeals Council never made a decision regarding the appeal.  The decision of the ALJ is thus, the final decision of the Commissioner.  Plaintiff has timely filed a civil action in this Court to review that decision.

## ISSUES

Plaintiff essentially raises four issues for review:

1. Whether the ALJ properly evaluated the medical source opinions;

2. Whether the ALJ erred in rejecting Plaintiff's credibility concerning his subjective complaints;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

3. Whether the ALJ properly evaluated Plaintiff's Global Assessment of Functioning (GAF) scores; and

4. Whether the ALJ's hypothetical given to the vocational expert properly included all of Plaintiff's mental and physical limitations at step five of the analysis.

ECF No. 14 at 16-17.

## DISCUSSION

### A. Opinions of Medical Sources

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* at 1195, 1202. In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

1    If a treating or examining physician's opinion is uncontradicted, an ALJ may

2    reject it only by offering "clear and convincing reasons that are supported by

3    substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

4    "If a treating or examining doctor's opinion is contradicted by another doctor's

5    opinion, an ALJ may only reject it by providing specific and legitimate reasons

6    that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d

7    821, 830-831 (9th Cir. 1995)).  Regardless of the source, an ALJ need not accept a

8    physician's opinion that is "brief, conclusory and inadequately supported by

9    clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

10   Cir. 2009) (quotation and citation omitted).

11       **1.  Opinion of Ms. Newman, Dr. Goodwin, and Dr. Arnold**

12       Plaintiff claims that the ALJ improperly rejected the opinions of Caitlin

13   Newman, MS, NCC, James Goodwin, Psy.D, and John Arnold, Ph.D.  ECF No. 14

14   at 17-18.  Each of these examining mental health professionals opined that Plaintiff

15   had moderate, marked, and severe limitations in cognitive and social functioning,

16   at various times.

17       The ALJ assigned little weight to these opinions and provided specific and

18   legitimate reasons for doing so. Preliminarily, the ALJ accorded less weight to Ms.

19   Newman's evaluations as she is not a psychologist. Tr. 766.   As a nationally

20   certified counselor, Ms. Newman is not considered an "acceptable medical source"

within the meaning of 20 C.F.R. § 416.913(a); SSR 06-03p, 2006 WL 2329939 at

*2.  Instead, Ms. Newman qualifies as an "other source" as defined in 20 C.F.R.

§ 416.913(d).  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Because

Ms. Newman is an "other source" rather than an "acceptable medical source," her

opinions about the nature and severity of Plaintiff's impairments are not entitled to

controlling weight.  SSR 06-03p, 2006 WL 2329939 at *2; 20 C.F.R. §

416.927(a)(2).  The ALJ need only have provided "germane reasons" for rejecting

Ms. Newman's opinions.  *Molina*, 674 F.3d at 1111.

First, the ALJ discounted these examining mental health professionals'

opinions because there were based primarily on the Plaintiff's self-reports.  Tr.

766.  This is a specific and legitimate reason because the ALJ also discounted

Plaintiff's subjective complaints, as explained in more detail below.

Second, the ALJ noted that the examining providers did not provide detailed

explanations for their opinions. Tr. 766.  An ALJ need not accept an opinion that is

brief, conclusory, inadequately supported by clinical findings, or based on the

Plaintiff's incredible testimony. *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.

2002).  The record supports the ALJ's observation about the lack of detailed

explanation for their severe findings of Plaintiff's incapacity.

Last, the ALJ gave little weight to the opinions because they were

"inconsistent with activities of daily living showing [Plaintiff's] ability to perform

1    at least SVP [Specific Vocational Preparation] 3 tasks and adequate social

2    interactions to function at the level described in the above residual functional

3    capacity." Tr. 766.

4        Evidence about daily activities is properly considered in making a credibility

5    determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  However, a

6    claimant need not be utterly incapacitated to be eligible for benefits. *Id*. Many

7    activities are not easily transferable to what may be the more grueling environment

8    of the workplace, where it might not be possible to rest or take medication. *Id*.

9    (citation omitted). But, there are two grounds for using daily activities to form the

10   basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625,

11   639 (9th Cir. 2007).  First, the daily activities may just contradict claimant's other

12   testimony.  *Id*.; *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("whether

13   the claimant engages in daily activities inconsistent with the alleged symptoms")

14   (citation omitted).   Second, daily activities may be grounds for an adverse

15   credibility finding if a claimant is able to spend a substantial part of his day

16   engaged in pursuits involving the performance of physical functions that are

17   transferable to a work setting.  *Orn*, 495 F.3d at 639.  Of course, "the ALJ must

18   make 'specific findings relating to [the daily] activities' and their transferability to

19   conclude that a claimant's daily activities warrant [this type of] an adverse

20   credibility determination." *Id*.

1    Here, the ALJ clearly used both bases to discredit Plaintiff's credibility. The

2    ALJ cited Plaintiff's activities of daily living, among other reasons not here

3    challenged, for discounting his allegation of total disability.  Tr. 762-63.  For

4    instance, the ALJ found Plaintiff is:

5        able to maintain personal hygiene and grooming, visit his parents
         every day, visit with neighbors, help clean his mother's house, help
6        clean his girlfriend's house, cook simple foods, launder his clothes,
         shop with his mother for groceries, go to AA meetings and church, go
7        to Bible study, and read and watch television for entertainment. He
         spends up to six or seven hours helping his mother. The claimant was
8        attending college full-time in 2010. Per his testimony, the claimant
         cuts and sells wood and he earns money on recyclables. Cutting
9        requires using a chainsaw (which he admitted doing in August 2010),
         suggesting good strength and use of the upper extremities and back.
10       The claimant was doing a lot of work on his mother "mini-orchard in
         September 2011 and in November 2011 he said the orchard work was
11       keeping him busy, again requiring good use of the upper extremities
         and requiring standing and walking for long periods of time.
12

13   Tr. 762.  These are just some of the detailed findings the ALJ made that are

14   supported by substantial evidence in the record.  An ALJ's finding that a doctor's

15   opinion is inconsistent with the claimant's own admitted daily activities is a

16   specific and legitimate reason for rejecting the opinion.  *See Tommasetti v. Astrue*,

17   533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting

18   inconsistencies between the opinion and the medical record or a claimant's daily

19   activities).

20

1    The Court concludes the ALJ provided specific and legitimate reasons for

2  rejecting the opinions of these examining professionals.

3    **2.  Opinion of Dr. Mabee**

4    Plaintiff contends the ALJ failed to provide adequate reasons for rejecting

5  the opinion of Dr. Mabee, a medical expert.  The ALJ disagreed with Dr. Mabee's

6  opinion as to Plaintiff's mental RFC, precisely his findings that Plaintiff had

7  moderate limitations in performing activities within a schedule, maintaining

8  regular attendance, completing a normal workday and workweek without

9  interruptions, and performing at a consistent pace. Tr. 766, 800-01.  The ALJ

10  found no evidence in Plaintiff's treatment history that Plaintiff had "moderate"

11  limitation in these areas:

12         However, in review the claimant's treatment history, there is no
           evidence the claimant has a moderate limitation in performing
13         activities within a schedule, maintaining, regular attendance, and
           being punctual or completing a normal workday and workweek
14         without interruptions from psychologically based symptoms and
           performing at a consistent pace without an unreasonable number and
15         length of rest periods. Throughout the claimant's lengthy treatment
           history, he has consistently maintained and attended appointments. As
16         far as interacting with the public, coworkers, and supervisors, the
           claimant, through his interactions with medical and mental health
17         professionals, has demonstrated an ability to interact adequately in
           social contexts.

18

19

20

Tr. 765-66.  A medical opinion may be rejected when it is "unsupported by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1195 (9th Cir. 2004).

While the record in this case is voluminous, the ALJ thoroughly evaluated and weighed the evidence.  It is this Court's duty to consider the record as a whole and determine if the ALJ's findings are supported by substantial evidence. Here, substantial evidence supports the ALJ's conclusion.

**B. Credibility of Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ improperly discredited his testimony regarding the severity of his pain. ECF No. 14 at 19.  Plaintiff reasons that he "had several surgeries, and the record contains ample instances of imaging to indicate objective sources of his pain. . . There is no evidence of malingering."  *Id.*

In order to find Plaintiff's testimony unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). An ALJ must perform a two-step analysis when deciding whether to accept a claimant's subjective symptom testimony. *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996). The first step is a threshold test from *Cotton v. Bowen* requiring the claimant to "produce medical evidence of an underlying impairment which is reasonably likely to be the cause of

the alleged pain." 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991). "Once a claimant meets the *Cotton* test and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if [the ALJ] makes specific findings stating clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1283–84 (citing *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993)). In weighing the claimant's credibility, the ALJ may consider many factors, including "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen,* 80 F.3d at 1284).  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

    Here, the ALJ first found that Plaintiff's testimony was not consistent with the objective medical evidence.  Tr. 761-765.  The ALJ's lengthy recitation of the medical evidence explains that while Plaintiff underwent wrist surgeries and knee

1    surgery, he recovered well and regained good strength and full range of motion.

2    See e.g., Tr. 759, 761, 426.

3        Next, the ALJ cited to Plaintiff's inconsistent statements regarding his pain,

4    even when taking narcotic pain medication.  Tr. 761.  This, combined with

5    Plaintiff's drug-seeking behavior, Tr. 764, and his inconsistent statements

6    regarding drug and alcohol abuse, Tr. 763, are all clear and convincing reasons for

7    discounting Plaintiff's credibility.

8        Plaintiff's inconsistent work history and activities of daily living are two

9    more clear and convincing reasons for discounting Plaintiff's credibility.  Tr. 762.

10        The ALJ did not err in discrediting Plaintiff's testimony and subjective

11    reports regarding his pain.

12    **C. ALJ's Evaluation of Plaintiff's GAF Scores**

13        Plaintiff claims that the ALJ erred by summarily rejecting the Global

14    Assessment of Functioning (GAF) scores in the record.  ECF No. 14 at 19-20.  The

15    ALJ found that an individual's GAF score is not equivalent to a finding of

16    disability and that the Plaintiff is capable of performing work as described in the

17    residual functional capacity quoted above.  Tr. 767.

18        Here, the ALJ gave little weight to the various GAF scores provided

19    throughout the record.  Tr. 766.  The ALJ thoroughly explained the deficiencies

20    associated with using the GAF score in the occupational functioning context.  *Id*.

1    Further, the ALJ recognized that the score can be based on the individual's self-

2    reported symptomatology, which may also be undermined by an individual's lack

3    of credibility.  *Id*.  As discussed above, that was the case here.  The GAF score (as

4    a method for evaluating the severity of impairments) has been specifically rejected

5    by the Social Security Administration. *Cowen v. Comm'r of Soc. Sec.*, 400

6    Fed.Appx. 275, 277 n.1 (9th Cir. 2010) (unpublished) (citing 65 Fed.Reg. 50746,

7    50764–65 (Aug. 21, 2000)).

8        Thus, the ALJ was not required to assign controlling weight to Plaintiff's

9    GAF scores in assessing the severity of his mental health symptoms.

10   **D. ALJ's Five Step Analysis**

11       Plaintiff argues that the ALJ did not conduct a proper step five finding on

12   the ground that the hypothetical given to the vocational expert was incomplete.

13   ECF No. 14 at 20.

14       This argument is derivative of Plaintiff's arguments discussed above.  Since,

15   the ALJ properly discredited Plaintiff's subjective complaints, properly evaluated

16   the medical evidence, and substantial evidence supports the ALJ's findings, no

17   error has been shown.   Defendant is entitled to summary judgment.

18   **IT IS HEREBY ORDERED:**

19       1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

2.  Defendant's Motion for Summary Judgment (ECF No. 18) is

   **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter

Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

   **DATED** September 29, 2014.



                    THOMAS O. RICE
                United States District Judge